The next case this morning is 5 23 12 96 people versus scales. Arguing for the appellant is Christina Solomon. Arguing for the athlete is Hiram Finchak. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Morning council morning. As you can see, Justice Welch is not present. He's unavailable this morning, but he will be listening to a recording of this oral argument and will be participating in this disposition with that appellant. If you are ready to proceed, you may do so. And thank you. Good morning. Your honors. My name is Christina Solomon. I'm the attorney for the appellant Lexus scales. May it please the court and counsel. Lexus. This story is the quintessential case of a person's right to defend oneself and their family. Yet Lexus has been punished for it. Lexus believed that she lawfully possessed her gun and called the police in fear for her and her family's safety. But then she herself was arrested. Lexus should not be criminally punished for possessing her gun out of necessity. And moreover, her constitutionally protected conduct shouldn't be criminalized. There are two propositions that the state must disprove in order to overcome Lexus's necessity defense. First, that Lexus was without blame in occasioning the situation. And second, that Lexus reasonably believed that her conduct was necessary to avoid a greater injury. And because the state cannot disprove either, this court should vacate or reduce Lexus's aggravated unlawful use of a weapon conviction. Lexus was not to blame in occasioning the situation. It was Kahlia's continued harassment that led to the escalation of the argument from a verbal one to something physical. It's according to the state's own evidence that it was Kahlia who followed Lexus outside from the house to the car. And then Lexus testified that Kahlia hit Lexus in the face, leaving her lip swollen, bruised and bloodied, which is corroborated by the testifying responding officer. Kahlia also yelled profanities about Lexus and her daughters and threatened to beat Lexus and then continued to follow Lexus again to the car while Lexus was putting her two year old away in the backseat. And at that point, Deontay, Kahlia's partner, had also joined the fray. Despite Lexus's attempts to leave, Kahlia continued to follow and it was at that point that Lexus felt she had no option but to grab her gun. The state seems to me that I want to ask you a question here. Why didn't she just leave in her car? She had the opportunity to do that. Well, actually, the evidence shows your honor that that wasn't a reasonable decision in that moment. Kahlia testified that she was standing right next to the car while Lexus was putting her child away in the backseat. This was right before she pulled the gun. Lexus felt in that moment that it was not reasonable to potentially get into a fistfight with Kahlia in order to get into her car and drive away. And that's because she had two daughters in the car. She was trying to protect them. She was alone. She was also homeless at the time. And all of her possessions were in the car. Kahlia and Deontay, on the other hand, were two adults aggressive. They were close to their home and in a much more comfortable position. Because of that vulnerability and the context of that situation, Lexus's decision to not fight Kahlia to get into her car makes sense. It was a reasonable decision. The alternate to her that she felt was reasonable was to pull out her gun for just a few seconds to scare Kahlia and Deontay away. And it worked. And once it worked, she put the gun back into the trunk of her car and called the police, which is another reasonable course of action that she felt was the safe thing to do. But she didn't pull away. Why didn't she pull away? Your Honor, she'd called the police at that moment. She was waiting for the police to arrive. And she'd already pulled the gun out of the car. That situation, she felt safer once that moment was over. But the point is, is that the state has to prove that Lexus's decision to pull the gun out of the car was not reasonable. And so what she did after she did, she performed that action doesn't necessarily equate into that, doesn't necessarily go to that equation. Furthermore, there weren't any other reasonable opportunities, whether or not she could, she, as I said, she couldn't fight past Kahlia to get into her car. She couldn't run away. She wasn't able to continue a verbal argument when Kahlia had already shown her willingness to escalate it into something physical. Again, Lexus had already made several attempts to deescalate the argument by walking away, moving to her car, and Kahlia followed her every step of the way. And also, Your Honor, the speculation about what Lexus may or may not have been able to do in the moment is done with the benefit of hindsight, which Lexus did not have in that moment. And as such, she was reasonable in her belief. Another thing, Your Honors, is that Lexus's conduct carrying a gun is a constitutional right protected by the Second Amendment. The aggravated unlawful use of a weapon statute violates the Second Amendment for criminalizing that conduct, both facially and as it's applied to Lexus. The first step in Bruin is to figure out whether the plaintext of the Second Amendment covers an individual's conduct. The state tries to, the conduct here, excuse me, is Lexus's possession of a gun, which is guaranteed to all Americans, according to the United States Supreme Court in Heller. Is possession of a gun guaranteed anywhere under Heller? Or does the Second Amendment limit possession to certain places? The possession of a gun can be limited, Your Honor, by a law. However... Now, what does the Second Amendment say about possession of a weapon? Does it say that it can be on your own abode, or can it be anywhere? No, Your Honor, the Second Amendment doesn't limit, not to my knowledge, but it limits it to a location. That is, those are laws that are created by individual states to limit the right to the possession of a gun. The state attempts to say that Lexus's conduct is illegally carrying a gun, which is conduct that isn't covered by the Second Amendment. That argument is circular. Lexus's conduct was not illegal if the aggravated unlawful use of a weapon statute under which she was convicted is unconstitutional. Well, let's talk about the as-applied challenge to her claim. She didn't attempt to get a CCL concealed carry license, did she? That evidence wasn't brought at trial, Your Honor, to our knowledge. No. How is it unconstitutional as applied to her for failure to have a CCL license? Well, Your Honor, she didn't have a criminal record. She believed she was in the right. She was mistaken in her belief that she was allowed to own a gun, to carry a gun in that manner. But her efforts show that she had a practice of being a law-abiding citizen. The Second Amendment protects gun ownership, a key principle of which is self-defense. Lexus was using that gun for that purpose in the circumstances in this case. Lexus needed the gun to protect herself in that moment. Even if this court finds that she's not met the statutory definition of necessity as discussed in the first issue, the facts are still relevant to show how Lexus is being punished for using a gun in a manner of self-defense. It's the state's burden to show that there's a historical analog for criminalizing someone's use of a gun under those circumstances. It did not go into any historical analogs in its brief because it cannot, because there is no historical comparison to criminalizing using a gun under similar circumstances to what we see here, which is a law-abiding citizen using the gun. How can she be law-abiding if she's not in compliance with Illinois law on the concealed carry issue? Yes, Your Honor, she didn't have a concealed carry license, that's true. However, she believed that she was in the right, which again, she was incorrect. But more to the point, she's law-abiding because we're challenging the constitutionality of the statute under which she was convicted. But the Bruin case doesn't allow you to look at the defendant's belief. We have to use a more objective standard than what your client believed, don't we? Sure, Your Honor, in that the reasonableness of Lexus's belief or decision may not impact the unconstitutionality of the statute. However, Bruin does allow you to challenge the constitutionality of a statute that imposes restrictions on gun possession. And here, the aggravated unlawful use of a weapon statute is what is in violation of the Constitution of the Second Amendment. Yeah, but that burden is a heavy burden on you to show that it's violative of the Second Amendment, correct? Actually, Your Honor, the state is on the burden, excuse me, the burden is on the state to show that the law has a historical analog and is in compliance with the Second Amendment. If I have another question. Of course, of course. There's a two-step process in Bruin, correct? Yes, Your Honor. What is the first step? The first step is analyzing whether the conduct at issue is covered by the Second Amendment. And the second step? What is your conclusion on that as far as the first step? That she can possess a gun in a car? That she can possess a gun in the car or that she can carry it outside of her car, Your Honor, is more to the point the conduct at issue because that is what she was convicted of. She was convicted of aggravated unlawful use of a weapon for violating the CCL statute for having a gun that was uncased, loaded, and accessible to her at the time. Yes, Your Honor. What is the second step in Bruin? The second step is analyzing whether or not there is a historical analog to the law being challenged, the aggravated unlawful use of a weapon statute, and the government has the burden to show that historical analog. And if the government shows that the history proves that the colonists, if you will, prohibited the unlawful use of weapons by certain classes of citizens, does the burden shift to you then to show that you're a lawfully abiding citizen in Illinois? Your Honor, it is the government's burden to show that the statute is constitutional. The burden shifts perhaps the defendant that hasn't been litigated as such and it didn't come up in Bruin itself. But to the extent that the state has the burden at the initial part of the second step, it has not done that in this case. It hasn't pointed to a single historical analog, a specific law that is comparable in purpose and in its goal, its end goal, to the aggravated unlawful use of a weapon statute. They have not pointed to a single relevant historical law to do so. Okay, thank you. Thank you. Thank you, Justice McKinney. All right. Appley, you'll be given a chance for a rebuttal. Appellant Appley, you may proceed. Good morning, Your Honors. This is Hiram Fenjack representing the state in this matter. With respect to the defendant's first argument, here the evidence was sufficient for a rational trier of fact to conclude that her affirmative defense of necessity was unsubstantiated and therefore that she was guilty beyond a reasonable doubt of aggravated unlawful use of a weapon. The necessity defense requires that two elements be met, that the defendant was without blame in occasioning the situation and that she reasonably believed her conduct was necessary to avoid greater injury. As far as the first element, the evidence indicated that the defendant contributed at least to some extent to the altercation and therefore it was not without blame. Although the defendant and Smith gave conflicting accounts of what exactly transpired during the altercation, the evidence indicated that both women had become engaged in a heated argument with the defendant expressing anger and satisfaction, thus contributing to the escalation of the altercation. Furthermore, even if the defendant is blameless, she still failed to establish that she reasonably believed her conduct, brandishing a loaded firearm, was necessary in the circumstance. The trial court noted that the defendant had alternative options. She could have simply entered her car and driven away. As the evidence did not support her claim that she was boxed in or unable to leave. Furthermore, Smith's alleged pushing or palming to the defendant's face did not justify the defendant's conduct as retrieving and displaying a loaded firearm was disproportionate to the threat and actually escalated the danger rather than preventing greater injury. Therefore, viewing the evidence in the light most favorable to the state, a rational trier of fact could have concluded that the defendant failed to establish the affirmative defense of necessity and therefore her conviction should be affirmed by this court. Turning to the defendant's Second Amendment challenge to the constitutionality, excuse me. Which challenge? Sorry, turning to the defendant's Second Amendment challenge to the constitutionality. Which challenge? The ass applied or the facial challenge? The facial challenge. Okay. As mentioned earlier, the Bruin analysis first asked whether the conduct falls within the Second Amendment's plain text. Well, the defendant has argued her conduct is presumptively protected. Multiple recent decisions by Illinois courts have held that the Second Amendment only protects the conduct of law-abiding citizens and does not extend to those who are actively breaking the law, as the defendant was here when she violated Illinois's concealed carry licensing requirements. Furthermore, even if this court reaches Step 2 of Bruin, Illinois shall issue licensing regime as constitutional. The second step of Bruin requires that a reviewing court assess whether the challenged regulation is consistent with the nation's historical tradition of firearm regulation. Contrary to the defendant's assertion in her reply brief, the state has not forfeited its argument that Illinois's licensing scheme is consistent with such tradition. In our answer brief, we cited to Rod and Gun Club, which engaged in a thorough historical analysis of this nation's early history of firearm regulation and concluded that Illinois's concealed carry requirements did not run afoul of the Second Amendment as they were sufficiently analogous to numerous founding era firearm restrictions. Additionally, Bruin specifically distinguished between shall issue licensing regimes like Illinois's from the may issue scheme that was struck down in New York. While the defendant has argued this distinction was mere dicta, numerous recent Illinois appellate court decisions, namely Gun, Thompson, Burns, and Hatcher, have upheld the state's regulatory framework based on the shall issue may issue distinction that was drawn in Bruin. In contrast, the state's shall issue may issue distinction that is unable to cite any Illinois case law adopting her position. Therefore, that makes Illinois a shall issue state? Yeah, Illinois is a shall issue state. That's what the Bruin court struck down, that the government couldn't be left at the discretion of the government to issue someone a concealed carry permit as long as they met certain objective criteria. It was a discretionary issue. Right, right. So as long as Illinois and I believe it's 43 other states have shall issue regimes, you just, the applicant just has to meet specific requirements, objective requirements, pay certain fees, and they have to be issued a license to carry by the government. There's not really an element of discretion on the government's part. And as I mentioned earlier, Bruin noted the distinction between those regimes in its decision. Therefore, this court should conclude that Illinois's concealed carry licensing requirements compart with the Second Amendment and reject the defendant's facial constitutional challenge. With respect to her as-applied challenge, she hasn't added any additional facts particular to her circumstances that would make Illinois's licensing requirements unconstitutional as applied to her. So therefore, this court should also reject the defendant's as-applied challenge to the constitutionality of Illinois's CCL requirements. Thank you, Your Honors. Any further questions, Justice Cates? No. Rebuttal? Thank you. Yes, Your Honors. Thank you. I will focus my rebuttal on Issue 2 unless Your Honors have any further questions for me on Issue 1. Counsel referred to Footnote 9 from the Bruin decision, which is an attempt to circumnavigate the Bruin analysis. Footnote 9 of the Bruin decision did not endorse the constitutionality of the aggravated unlawful use of a weapons statute, nor even Illinois's dual licensing regime. In fact, it was doing the opposite. It was guarding against an advisory opinion on the constitutionality of other types of laws than the one before it at the time in the Bruin. And that's clear from the language of the footnote itself. First, the footnote explicitly states that challenges can still be made to shall issue laws. And second, 24 of the 43 states that counsel referred to, that the footnote refers to, did not have mandatory licensing regimes at all. Their constitutional carry states that have non-mandatory shall issue licensing regimes, unlike here in Illinois, where we have a mandatory shall issue licensing regime, where a person, an applicant, has to go through two steps to show that they are, to twice prove that they are law-abiding. And there's no historical analog for a law like that, Your Honors. Ms. Solomon, your client did not go through the steps to become a concealed carry applicant. No, Your Honor. I'm having trouble understanding how she has standing to raise the as-applied issue when she didn't try to go through the process. Well, Your Honor, the state has not challenged standing, and so that is not an argument that they brought forth. That's something we can raise. Yes, Your Honor, and to that point, she was still convicted and is still, has been punished and has a felony on her record for the criminalization of the CCL Act. So, I'm talking about the as-applied challenge to the constitutionality of the statute that you're convicted under. She hasn't gone that extra step to try and get a CCL license, or never did. Yes, Your Honor, her conviction under the aggravated unlawful use of a weapons statute, which is, which it incorporates the Concealed Carry Act and the laws of the Concealed Carry Act into its, into the criminalization of the conduct, is sufficient to provide standing for her. Lexis is suffering because she was criminalized for her conduct, conduct which should be protected under the Second Amendment and should not be criminalized, even as it should not be, Lexis. Okay, do you agree with the state's position that the majority of jurisdictions, right now at least, look at the law-abiding citizen analysis as the first step in Bruin, whether the individual was a law-abiding citizen? There are quite a few cases that use that language, Your Honor, but that is typically in an analysis done of this statute when it's a conviction based on a predicate felony. So, an unlawful use of a weapon by a felon, as opposed to what we're discussing in this case, which is unlawful use based on not having a CCL and carrying the gun in violation of the CCL Act. Yes, Your Honor. Okay, I think you're right about that. Okay. Okay, and I would just like to address one more thing with the last moment, and that would be the Sinisippi case that the, that counsel referred to as a historical, as a historical analysis. Which case, Suzanne? It was the Sinisippi case. It's a, the gun range, I can't recall the rest of the name, but I can file something after if you'd like. That's okay, it's in the brief. Yes, it is. In reference to that case, it, the third district there did approve the general notion that states had some historical authority to regulate the manner of public carry for the purposes of public safety, but their historical analysis was too broad, and it did not point to a specific analogous regulation that prohibited the carrying of a firearm without a state-issued license by a law-abiding citizen for self-defense. And again, that is the conduct that we are discussing here, and for that reason, Your Honors, the aggravated unlawful use of a weapon statute violates the Second Amendment. Thank you. Any further questions, Justice Cates? No, thank you. All right, counsel, thank you very much for your arguments. We will take this matter under advisement, issue a ruling in due course.